[No. 940.  August 28, 1902.]

CLEOFAS ROMERO, Appellee, v. FANNIE COLE-
MAN et al., Appellants.

#### SYLLABUS.

1.  The finding of facts by a trial court will not be disturbed unless it is clearly against the weight of the evidence.

2.  When a case is tried to the court, the court is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony.

Appeal from the district court of San Miguel county, before WILLIAM J. MILLS, Chief Justice. Affirmed.

W. C. REID for appellant.

Where there is a community of property, the profits and losses may be represented in the gross receipts, as they frequently are and especially where the partner-ship is created for a specific purpose.

Musier v. Trumpbour, 5 Wendell's Rep. 278; The Farmers Insurance Company v. Ross & Lennan, 29 Ohio St. 429; 3 Kent's Commentaries, p. 25 note; Beecher v. Bush, 7 N. W. (Mich.) 785.

The real test of the liability of a person to third persons as a partner, is, whether the other person or persons conducting the business were his agents to carry it on.

Eastman v. Clark, 53 N. H. 276; Waugh v. Carver, 1 Smith's Leading Cases (Part II) 1299 and notes.

A partner is not merely a creditor but an owner and as such, is entitled to a priority over other persons who are strangers to the fund.

Fitch v. Harrington, 13 Gray 468, 474; Bertholdi v. Goldsmith, 24 Howard 536, 543; Turner v. Bissell, 14 Pick. 192; Loomis v. Marshall, 12 Conn. 69.

But if a party acquires a right of property in addition to a right of action, a partnership will arise by legal construction, and without regard to design.

Jules v. Ingals, 1 Allen 41; Wood v. Vallette, 1 Ohio —.

What transactions will be regarded as partnerships?

Goddard v. Pratt, 15 Pick. 425; Beaming v. Craft, 9 Metc. 380; Champion v. Bostwick, 18 Wend. 175; Everett v. Chapman, 6 Conn. 347; Buckman v. Barnum, 15 Conn. 87; The Catskill Bank v. Gay, 14 Barb. 471; Holt v. Kornodole, 1 Iredell 199.

An agreement whereby one is to furnish lumber and

Romero v. Coleman.

market the same when sawed, and the other is to saw it on halves, makes a partnership.

> Lee v. Ryan, 16 So. 2; Reid v. Hollingshead, 4 Barn & Cress. 868, 836.

CHARLES A. SPIESS for appellee.

The plaintiff was a materialman, and was not in a position to state exactly what portion of the material furnished by him, was used in each house, nor was he required to do so.

> Sprague Investment Company v. Monat Lumber and Investment Company, 60 Pac. 179.

The judgment in this case is a judgment *in rem.*

> Crocker et al. v. Currier, 65 Wis. 662; Cole v. Association, 52 N. W. 1086; Sullivan v. Sanders, 9 Mo. App. 75; Farley v. Camnean, 43 Mo. App. 168.

Even if this judgment is irregular in this respect, the Supreme Court is authorized to enter such judgment as to it shall seem agreeable.

> Bates v. Childers, 5 N. M. 62, 79.

Our statutes, section 2217, make every contractor, subcontractor, architect, builder or other person having charge of any mining, or of the construction, alteration or repair . . . of any building or other improvements . . . the agent of the owner for mechanic's lien purposes.

> Phillips on Mechanics' Liens, sec. 204; Boisot on Mechanics' Liens, sec. 19; Hobbs v. Spiegelberg, 3 N. M. 357-363.

OPINION OF THE COURT.

BAKER, J.—This is an action to foreclose a mechanic's lien, coming here on appeal from San Miguel county, Fourth judicial district.

There seems to be no dispute that the material for which the lien is claimed was furnished in the construction of the buildings upon the real estate described in

the complaint, and that the appellee, Romero, was never paid for the same. The real question is, Whose material was it? It is contended by appellee that the material furnished for which a lien is asked was his personal property before it was placed in the houses erected for appellant on the lots described in the complaint. The case must, therefore, be determined upon matters of fact. Cleofas Romero testified in effect that there was an agreement between him and Elisandro Montoya, that Montoya was to tear down the three-story structure known as the Baca building, and, as consideration for his work in so doing, he was to receive one-half of the material contained in the second and third stories. All of the stone was to go to Romero, and the adobes to Montoya. The testimony of Montoya was to the effect that the agreement to tear down the building was that he (Montoya) should do so for one-half of the material. The referee and the court found in favor of the contract as stated by Romero, and there seems to be evidence sufficient to support such finding. After the tearing down of the building had proceeded until the third and most of the second story had been taken down the evidence warrants the statement that Montoya has used all of his share of the material up to that time, and a part at least of Romero's. At that time there was a new agreement, as testified by both Montoya and Romero, to the effect that the tearing down process should continue and that all the stone which comprised the first story of the building, as well as all the balance of the material then in the Baca building should go to Romero, and for the further labor of tearing down the building Montoya was to receive no consideration other than that he had already received in materials before that time taken by him from the Baca building. On or about this time, Montoya entered into a contract or agreement to build three stone houses upon the property described in the complaint, and in carrying out the contract for the construction of these

houses he used the material thereafter taken from the Baca building, except as to seventy-five perch of stone concerning which there is a conflict of testimony as to whether it was furnished before or after the second agreement between Romero and Montoya for the tearing down of the remaining portion of the Baca building. It is contended by appellants that if the seventy-five perch of stone were furnished before the second agreement between Romero and Montoya, then said seventy-five perch furnished in the construction of the three houses, were joint property of Romero and Montoya. It seems the referee and the court found from the conflicting testimony that Romero always (so far as this contention is concerned) owned the stone of the first story of the Baca building. That finding was based upon sufficient evidence to support it, and, that being true, it is immaterial whether the seventy-five perch were furnished before or after the second agreement or contract between Romero and Montoya.

The testimony of Montoya and Romero is to the effect that all material furnished from the Baca building, which went into the three houses constructed for appellant, Coleman, was the exclusive property of the appellee, Romero. It is true that Romero says; "Montoya was practically my partner," but this statement is a mere conclusion, and the testimony of Romero taken as a whole, does not warrant it. The fact of ownership of the material furnished was one to be determined by the trial court from the evidence in the case. It seems the referee in the first instance, and the court in the second instance, relied upon the testimony of the witness Romero and Montoya. The trial court is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. Jarrell v. Barnett, 9 N. M. 254. It has been settled many times by this court that it will not interfere with the findings of fact of the jury or a trial court when there is any evidence to support such findings, unless it is clearly against the weight

of the evidence.   Waldo v. Beckwith, 1 N. M. 97; Badeau
v. Baca, 2 N. M. 194; Territory v. Webb, 2 N. M. 147;
Territory v. Maxwell, 2 N. M. 250; Lynch v. Grayson, 7
N. M. 26; Hopper v. Browning, 19 Neb. 420.   The testi-
mony in this case is conflicting upon every point, there-
fore, in accordance with the cases cited, the findings of
the trial court on the evidence in the report of the ref-
eree will not be disturbed.   And the same rule applies
with equal force to the evidence as to the amount of
stone furnished as to any other fact.   We may add, how-
ever, that the question of the amount of stone fur-
nished was not raised in the lower court and will
not therefore be considered for the first time in this
court.   Coleman et al. v. Bell et al., 4 N. M. 21; Conway
et al. v. Carter et al., 68 Pac. (N. M.) 941.

Under section 2217, Compiled Laws of New Mexico,
1897, "Every person performing labor upon or furnish-
ing material to be used in the construction of any build-
ing  . . .  has a lien upon the same for material fur-
nished whether furnished at the instance of the owner
of the building  . . .  or of his agent; and every con-
tractor  . . .  shall be held to be the agent of the
owner for the purposes of this act."    Therefore, the
transaction between Romero and Montoya was the trans-
action, in fact, by virtue of section 2217, supra, between
Romero and Coleman.  The witnesses Romero and Mon-
toya each testified that the contract price for the stone to
go into the houses for appellant was seventy-five cents
per perch, as it stood in the walls of the Baca house.
This, it seems, would fix the price which appellants were
to pay for the stone.   The contract by Montoya with
Romero would be binding upon the appellants, unless
for fraud, extravagance or a disregard for the price to
be paid out of the money of his principal.   The testimony
of several of the witnesses fixes the market value of like
stone, at that time in Las Vagas, to be about eighty
cents per perch.   It will be observed that the stone was
not delivered at the Coleman property, but was to be

Romero v. Coleman.

paid for at seventy-five cents per perch in the wall at the Baca building. This may be a little excessive according to the price established by the witnesses, but the market price is always fixed by averging the highest and lowest prices. There is not such a variation in the market and contract price of the stone as to warrant finding the contract between Romero and Montoya void.

Appellants complain of the form of the judgment, for the reason that it is a judgment *in personam* against appellants. In the first part of the judgment is the following recital: "It is therefore ordered, adjudged and decreed by the court that the plaintiff, Cleofas Romero, have and recover of and from the defendants Fannie Coleman, and Elisandro Montoya, the just and full sum of seven hundred and four dollars and eighty-seven cents for and on account of the materials set out in the plaintiff's complaint." Standing alone this would seem to indicate a personal judgment against appellants for the amount specified, but from the judgment taken as an entirety, it is clear that it is intended only that the property shall be sold to satisfy the said amount, with costs, etc., and that it provides no further remedy for the enforcement of the judgment. Therefore, it is not a judgment *in personam.*

Having approved the several findings of fact of the trial court on the subject of the ownership of the material furnished, it goes without saying, that we are of the opinion that there was no partnership existing between Romero and Montoya in the material furnished appellants.

For the reasons given the judgment of the court below is affirmed.

McFie, Parker and McMillan, JJ., concur.